## Case No. 13,044.

### SMITH v. ELY et al.

[10 N. B. R. (1874) 553.][1]

#### Circuit Court, N. D. New York.

CHATTEL MORTGAGE—POSSESSION AND POWER TO SELL—PROCEEDS OF SALES—BANKRUPTCY—ASSIGNEE.

1. Where by the terms of a chattel mortgage the mortgagor is permitted to remain in possession and sell the goods, buying others to replace—under an agreement to let the goods bought replace those sold. this renders the whole mortgage void as an illegal hindrance to creditors outside of the bankrupt law [of 1867 (14 Stat. 517)].

2. Where a mortgagee leaves the mortgagor of personal property in possession as the agent of the mortgagee. the mortgagee will be chargeable as against other creditors with the amount sold by the mortgagor, whether applied on the debt or not.

3. An assignee in bankruptcy may set aside any conveyance or fraudulent transfer, that but for the bankrupt act might have been set aside by creditors after having obtained judgment.

In April, 1869, Jenkins. Newton. Pierce & Co. commenced business in the city of Rochester. as retail dealers in dry goods. The de-

---

1 [Reprinted by permission.]

fendant [Joseph N. Ely] sold that firm between five thousand and six thousand dollars worth of goods, of which four thousand two hundred and thirty-three dollars was unpaid on January 1st, 1870. On that day that firm was succeeded by the firm of Jenkins, Newton & Pierce, which assumed the liabilities of the former firm. Jenkins, Newton & Pierce, wishing to secure this indebtedness and to secure future purchases, executed chattel mortgages to defendants. These mortgages were dated respectively January 13th and February 3d. 1870, were never released, and the firm of N. & R. M. Stearns took the property covered by them, with knowledge, and subject to the incumbrance. On the 28th of February, 1870, the firm of Jenkins, Newton & Pierce was dissolved, and was succeeded by the firm of N. & R. M. Stearns, of which this plaintiff [Vincent M. Smith] is assignee. N. & R. M. Stearns assumed the liabilities of Jenkins, Newton & Pierce, and took their stock of goods, subject to the chattel mortgages to the defendants. There was due on those chattel mortgages in the vicinity of six thousand seven hundred dollars. Early in March, 1870, one of the firm of N. & R. M. Stearns applied to the defendants for a line of credit. He was asked as to the condition of the firm, and said it had a capital of twenty-five thousand dollars over liabilities, and the members had also individual property. The defendants refused to give credit unless they had security, and N. & R. M. Stearns agreed to give a chattel mortgage on their stock of goods. This mortgage was accordingly executed, dated March 2d, 1870, and delivered to the defendants. It was duly signed in the clerk's office in Monroe county, on July 6th, 1870, and conveyed "the fixtures of N. & R. M. Stearns; also, the merchandise in the store, and what might be put in during the year ending January 12, 1871," conditioned to secure the defendants for goods to be sold N. & R. M. Stearns. Also, to secure one Nelson W. Stearns, who had guaranteed the firm's indebtedness to a certain amount, it was provided that Nelson W. Stearns should take immediate possession of the stock as trustee for himself and Ely, Oberholser & Co., and retain possession until that firm should be paid or should themselves take possession under the mortgage. Mr. N. W. Stearns did remain in the store, superintending and receiving a certain salary for his services as trustee, but N. & R. M. Stearns bought and sold goods in their own name, and the defendants' account was kept with them. Under this chattel mortgage the defendants sold N. & R. M. Stearns goods to the amount of thirty-nine thousand dollars. On November 12th, 1870, N. & R. M. Stearns were indebted to them for over thirty-five thousand dollars. The defendants sold the firm down to the 1st of November, selling them several thousand dollars worth in September. The Stearnses repeatedly stated that they were solvent in September, claiming they were worth twenty-five thousand dollars, and also stating that they bought goods on credit of no one but the defendants. On the 12th of November, 1870, as the Stearnses were slow in payments, the defendants' agent came up to Rochester and examined their books. Then for the first time, the defendants found that the Stearnses had bought goods on credit from other parties. Their total indebtedness, aside from that to the defendants, was for some six thousand or seven thousand dollars. The Stearnses had grossly misrepresented the value of their stock, and that it was not sufficient to satisfy the amount secured by the chattel mortgage. Thereupon, on November 12th, 1870, the defendants took possession under the chattel mortgages executed to them by Jenkins, Newton & Pierce, and by N. & R. M. Stearns, and afterwards sold the goods. The stock was worth fifteen to sixteen thousand dollars in cash. The proceeds failed to satisfy the indebtedness to Oberholser & Co. by sixteen thousand dollars. The goods taken possession of under this chattel mortgage, one thousand two hundred dollars worth, was in fixtures. From ten thousand to fifteen thousand dollars worth of the goods came from Jenkins, Newton & Pierce, and were subject to the mortgages executed by them. Not more than two thousand or three thousand dollars worth of these goods had come from any store but that of the defendants. On January 13, 1871, a petition in bankruptcy was filed against N. & R. M. Stearns, on which they were afterwards adjudicated bankrupts, and the plaintiff was chosen their assignee.

John M. Pomeroy, for complainant.

First. Independently of the provisions of sections 35 and 39 of the bankrupt act, the mortgage from N. & R. M. Stearns to the defendants, dated March 2, 1870, was null and void under the laws of the state of New York, on the ground that it was given to hinder, delay, or defraud other creditors of that firm; all the proceedings under it were, therefore, null and void, and the complainant, as assignee, representing the creditors at large, can maintain this action for an account of the proceeds of the goods, etc., taken by the defendants. It is the settled law of New York, and also of the bankrupt court, that when a chattel-mortgage purports to be given upon goods to be after acquired by, or afterwards to come into the possession of, the mortgagor, it is as a matter of law fraudulent and void as against other creditors, at least in respect to such after-acquired goods, even if not absolutely void in respect also to the goods on hand when it was given. This doctrine is too firmly established to require more than the citation of the recent cases directly in point. Edgell v. Hart, 5 Seld. [9 N. Y.] 213; Gardner v. McEwen, 5 Smith [19 N. Y.] 123; Mittnacht v. Kelly, 3 Keyes [*42 N. Y.] 407; Otis

v. Sill, 8 Barb. 102; Milliman v. Neher, 20 Barb. 37; Conderman v. Smith, 41 Barb. 404; Powers v. Freeman, 2 Lans. 127; In re Kahley [Case No. 7,593]; In re Eldridge [Id. 4,-330]. The theory of the rule is, that such a provision is at most an agreement to sell, and does not amount to a transfer of property, even between the parties. As between them it creates only an equitable lien, which the mortgagee cannot enforce by taking possession, but can only enforce by a decree in equity establishing the lien. As an inevitable result there is no lien as against other creditors. Filing such a mortgage, and even actual notice of it, does not create a lien as against third persons, purchasers or creditors, because, in respect to such provision, it is not a mortgage or sale, but merely an agreement to give a lien.

Second. But the mortgage was wholly void as to goods on hand as well as to after-acquired goods, for another reason. It is settled that if a chattel mortgage, expressly or by necessary inference from its terms, allows the mortgagors as traders to go on and sell the mortgaged goods and buy others, and thus carry on a regular trading business, with stipulations that the mortgage shall continue to apply to and bind all the goods thus at any time on hand, it is void in toto. Edgell v. Hart, 5 Seld. [9 N. Y.] 213, 217, 219; Ford v. Williams, 3 Kern. [13 N. Y.] 577, 583. 584; Frost v. Warren, 42 N. Y. 204; In re Kahley [supra]; In re Manly [Case No. 9,031]; In re Hussman [Id. 6,951].

Third. If the mortgage stipulates, or parties agree, that the mortgagor may sell the goods, and that the proceeds shall be applied on the mortgage debt, then the mortgagor becomes an agent of the mortgagee; and moneys received by the mortgagor from sales are, so far as the other creditors are concerned, to be considered as applied on the debt, either diminishing or destroying the lien, as the case may be. This is so, even though the mortgagor actually applies such moneys to his own use and does not pay them over to the mortgagee. Conklin v. Shelley, 1 Tiff. [28 N. Y.] 360; Hawkins v. First Nat. Bank [Case No. 6,244]. As a chattel mortgage purporting to be upon after-acquired property, creates no lien even as between the parties, but is only a personal agreement, such a mortgage is not in itself a preference or transfer; but the taking possession of the goods under the mortgage, is the transfer and the unlawful preference condemned by sections 35 and 39. Harvey v. Crane [Id. 6,178]; In re Eldridge [supra]; Second Nat. Bank v. Hunt [11 Wall. (78 U. S.) 391]; Graham v. Stark [Case No. 5,676]. So in cases relating to warrants of attorney and judgments thereon; the preference dates from the time of taking possession under the judgment, and not from the time of giving the warrant. Golson v. Niehoff [Id. 5,-524]; In re Lord [Id. 8,503]; In re Dibblee [Id. 3,884]; In re Terry [Id. 13,835]; Clark

v. Iselin [Id. 2,825]. When an insolvent debtor transfers all his property, or even any considerable portion of it, to a creditor, a preference is necessarily created, and a fraud upon the act is necessarily perpetrated; and when, in addition to these facts the debtor and the preferred creditor know of the insolvency, both of them are conclusively charged with the intent to commit a fraud upon the act, which is made unlawful by the provisions of sections 35 and 39. This is a mere application of the familiar rule that a man shall be presumed to intend the natural and necessary consequences of his own acts. In re Drummond [Case No. 4,-093]; In re Black [Id. 1,457]; In re Sutherland [Id. 13,638]; In re Dibblee [supra]; Farrin v. Crawford [Case No. 4,686]; In re Smith [Id. 12,974]; In re Bininger [Id. 1,-420]; In re Silverman [Id. 12,855]; Rison v. Knapp [Id. 11,861]; In re Gregg [Id. 5,797]; In re Manly [supra]; Graham v. Stark [supra]; Scammon v. Cole [Case No. 12,433]; Driggs v. Moore [Id. 4,083]; Hall v. Wager [Id. 5,951]; Toof v. Martin [13 Wall. (80 U. S.) 40]; 8 N. B. R. 49; Warren v. Tenth Nat. Bank [Case No. 17,202]; Buchanan v. Smith [16 Wall. (83 U. S.) 277]; Walbrun v. Babbitt [Id. 577]; Stobaugh v. Mills [Case No. 13,461]; In re Forsyth [Id. 4,948]; Hall v. Wager [Id. 5,951]; Sawyer v. Turpin [Id. 12,410]; Traders' Nat. Bank v. Campbell [14 Wall. (81 U. S.) 87]; Golson v. Neehoff [supra]. The assignee does not take the rights and property subject to the equities of the defendants, but adverse to them, as he represents the other and innocent creditors, and may maintain actions which the bankrupts could not maintain. This is now settled by the highest court. Edmonson v. Hyde [Case No. 4,285]; Massey v. Allen [17 Wall. (84 U. S.) 351]; In re Leland [Case No. 8,234], per Woodruff, J.

James, Breck & Perkins and W. F. Cogswell, for defendants.

The chattel mortgage executed by N. & R. M. Stearns to the defendants, was valid, and can be supported on various grounds. So far as it conveyed the fixtures, etc., its legality cannot be questioned. This is expressly decided by Judge Blatchford, in Re Perrin [Case No. 10,995]. The fixtures composed about one thousand two hundred dollars of the property coming into the hands of the defendants. (Plff.'s Ev., fol. 194.) The mortgage is valid, because under the clause providing for the appointment of a trustee, the defendants at once took possession of the mortgaged goods. Mortgages somewhat similar to this have been held void, because there was no change in the possession of the mortgaged property. But no case can be cited where a mortgage was held void, containing such a clause as is here found. The validity of this mortgage is established by the case of Brown v. Platt, 8 Bosw. 324. In the opinion of Woodruff, J., he holds that

where a mortgage contained the same conditions as this as to after-acquired property, but the goods were delivered to the plaintiffs before the creditors questioned its validity, the mortgagor could hold the goods. This is precisely this case. The mortgage is certainly valid as to all property in the store at the time it was given. In re Eldridge [Case No. 4,330].

As to the goods coming from Jenkins, Stearns & Pierce, the assignee can make no claim. There are here no creditors of the firm of Jenkins, Stearns & Pierce, and no purchasers without notice. In re Stowe [Case No. 13,513]. The defendants had not the right to avoid the sales made by them to the Stearnses, and to seize the goods on the ground that the goods were obtained by fraudulent representations. The assignee cannot question the validity of the defendants' mortgage. He is neither a creditor, nor subsequent purchaser in good faith. This was held under the former bankrupt act by Mr. Justice Story. Winsor v. McClellan [Id. 17,887]. The court held, in Re Dalby [Id. 3,540], that an unrecorded mortgage was good against the assignee, though void against execution creditors. The reasoning covers this case. But this question has been finally settled by the late decision of the supreme court of the United States. Gibson v. Warden, 14 Wall. [81 U. S.] 244. This was an action brought by the assignees against parties holding chattel mortgages given by the bankrupt, and claiming the mortgages were void under the state laws. The statute rendered undeposited mortgages void as against "creditors, subsequent purchasers, and mortgagees in good faith." The assignees had judgment below. On appeal the supreme court reversed this judgment, and Mr. Justice Swayne, giving the opinion of the court, cites the wording of the statutes and says: "These assignees are neither. As between the mortgagor and mortgagee, and subsequent mortgagees, and purchasers with notice, the mortgage was valid and took effect from the time of its delivery, more than six months before the filing of the petition." Pages 249, 250.

WOODRUFF, Circuit Judge. This case involves the consideration of three questions. First. Were the mortgages which were held by the defendants valid irrespective of the alleged possession of the goods by Nelson W. Stearns? Second. What effect had the alleged possession of Nelson W. Stearns upon the rights of the parties? Third. How did the delivery or surrender of possession by the bankrupts to the defendants November 12th, 1870, affect the rights of the assignee? Upon these questions, my conclusions must be very briefly stated:

First. The mortgages were fraudulent and void as against creditors. They were so independently of the bankrupt law. Although it is not in terms so expressed in the mortgages, yet it is clear upon the evidence that the understanding of all parties was, that the mortgagors should continue their business as merchants, as such sell the goods then on hand, buy others, and sell them in turn in their discretion, for the purposes of gain. If they succeeded in making profits enough, or actually applied the proceeds of sales, or the profits, to the satisfaction of the mortgage debt, then the mortgagee would be content, but if not, then all the goods on hand when the mortgage was made, and all that should thereafter be added thereto, should be swept into the net prepared by the defendants, to gather whatever there might be of value into their possession. Such an arrangement is most clearly void as to other creditors, and has again and again been so adjudged by the courts of this state.

Second. The principal mortgage provided, at the time it was executed, that Nelson W. Stearns, who was surety for the payment to the defendants by the bankrupts, might take immediate possession of all the property in the store, and of all that might be thereafter placed therein, as trustee under the mortgage, and that he should retain possession until the mortgage indebtedness should be paid. If the intention was, as is most manifest, that notwithstanding this clause in the mortgage, the mortgagors should, as in fact they did, control the property, sell in their discretion, buy other goods to replenish, receive the proceeds of sale and appropriate them as they saw fit, the suggestion of actual possession and trusteeship becomes absurd; such possession and trusteeship was, at most, a pretense. What Nelson W. Stearns did was only to watch the progress of affairs, and as a watchman to observe that the business was regularly conducted agreeably to the obvious intention, viz.: by the bankrupts; they buying and selling and receiving the proceeds under some supervision not very well defined, and not in fact interfering with their actual conduct of the whole business. In this view, there was nothing in this which relieved the transaction from the condemnation first above stated. The ostensible possession and the actual possession were in the bankrupts, who were thus held out to the world as the owners of the property. The only alternative possible under this clause of the mortgage, is to treat Nelson W. Stearns as in possession and as trustee for the defendants, holding and controlling the property for their benefit and security. He held the property for them or he did not. If not, then what has been already said applies. If he did, then through and by the aid of the bankrupts he sold and received payment for them in cash, to the amount according to testimony, of between fifty thousand and sixty thousand dollars, a sum more than sufficient to satisfy the whole mortgage debt. If it be nevertheless said that the bankrupts took the money, and that as among themselves it was competent to permit them to take and use the money, with-

out applying it to the mortgage debt, and so shift the lien from the goods sold to the goods purchased, and thus keep the mortgage alive, this only brings us around again to the exclusion of the idea that the trustee ever had, or was intended to have, any such trusteeship or possession as could add any validity to the mortgages, and they remain liable to the objection that the mortgagors had possession and control, with power to sell and appropriate the proceeds as they saw fit. That Nelson W. Stearns was a sort of supervisor or watchman to guard against the carrying off of the property, or its disposal in fraud of the understanding of the parties, does not help the defendants.

Third. Under these views of the rights of the parties and of the validity of the mortgages, how did the delivery or surrender of possession by the bankrupts to the defendants on the 12th of November, 1870, affect the right of the assignee in bankruptcy. If, as against creditors, the mortgages and the alleged title of the defendants to the property was fraudulent and void, their taking possession in the mere exercise of their claim of the title would not aid them. Their title remained fraudulent and void still as against creditors. If, on the other hand, the assent of the bankrupts to their taking possession, the delivery of the property and surrender of the keys were, of themselves, an appropriation of the property to the payment of the mortgage debt, then the bankrupt law pronounces it void for this reason, both parties then knew that the bankrupts were insolvent; it swept the entire partnership property into the hands of the defendants; it operated, and was clearly intended to operate to give them security and payment to the exclusion of their creditors, and it was within four months next preceding the filing of the petition upon which the defendants were adjudged bankrupts. The defendants can therefore gain nothing from this latter view of the transactions. Nor am I inclined to adopt the last-mentioned construction of the acts done in November. They were, on the part of the defendants, a setting up of their claim to the property, and the acquiescence of the debtors therein, when they supposed resistance would be useless, if not on their part improper. I do not think so harsh an effect should therefore be given to the taking of possession in November. To hold it the giving or acceptance of new title to the property, would exclude the defendants from any right to prove their debt against the estate of the bankrupts.

Fourth. It is not then on the ground that these instruments are made void by the bankrupt law itself, but because they are fraudulent and void as against creditors, and might be set aside at their instance independently of the bankrupt law, that the complainant is entitled to a decree. That an assignee in bankruptcy can set aside such fraudulent conveyance, and recover property so fraudulently held, is not, I think, doubtful. On general principles, without express words in the act, I should hold the assignee to represent creditors who, after adjudication, can no longer obtain judgments, and so place themselves in the position to attach fraudulent conveyances. But section 14 expressly declares "that all property conveyed by the bankrupt in fraud of his creditors shall be at once vested in such assignee." The proviso in the 39th section, which requires that the petition of a creditor who asks that a debtor be adjudged a bankrupt against his will, must allege some act of bankruptcy committed within the six months next preceding, does not per se determine what property shall vest in the assignee.

Suppose the act of bankruptcy alleged be, suffering commercial paper to remain unpaid for more than fourteen days. If the creditors allow six months to pass they cannot make that a ground of adjudication. But on the other hand, if they do proceed in due time and obtain an adjudication, declaring the debtor a bankrupt, the effect, and the determination of the question what property vests in the assignee, is to be ascertained by the 14th section, as well as the 35th, 39th, and others. It may be that transfers which are otherwise lawful and valid, and which can in no wise be impeached, except upon the ground that they are expressly made acts of bankruptcy by the bankrupt law itself, cannot be impeached by the assignee if they are made more than six months before petition filed. The creditors may in such case be deemed to waive the illegality created by that act, and be not only forever barred to allege that they are acts of bankruptcy, but that they are invalid under that law. Although no transfer made more than six months before the filing of the petition, can be made the ground of adjudicating the debtor a bankrupt, it in no sort follows that when the debtor has upon lawful ground therefor been decreed a bankrupt, the assignee cannot impeach any conveyance and recover any property which, were there no bankrupt law, the creditors (having first obtained judgment) might impeach and recover on the ground that it was conveyed or transferred to defraud them. On the contrary, the 14th section expressly, and the general rules of equity, with equal certainty, do permit it.

The mortgages must be declared void, and the defendants must be decreed to account for the property of which they took possession on the 12th day of November, 1870. It appears that the defendants proceeded from that date to sell from the store, according to the usual course of business, down to the 12th of January, 1871, at or about which time the petition in bankruptcy was filed, and that they then sold out the residue in gross. I think that justice will be satisfied by charging the defendants with the proceeds of sales made in the exercise of reasonable diligence and discretion, and allowing them just and reasonable expenses of such sales, down to the said 12th day of January, 1871, and then charging them

with the fair market value of the property then on hand. As to that final sale, the assignee should not be concluded by the fact that they sold out in gross for fifty-five per cent. of the cost, if he can show that the property was worth more.

Let a decree for the complainants be entered in conformity with this view, with costs to the complainant, and let a reference be ordered for the taking of the account.